UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊

**LARRY D'AMBROSIO d/b/a WESTERN CONTRACTORS,**

                              **Plaintiff,**

                  **-v-**                           **6:12-CV-1895 (NAM/TWD)**

**BAST HATFIELD, INC.; MICHAEL SALISBURY - Project Manager; AJ LOMNES - Vice President; LOIS McLAUGHLIN in her official capacity as minority representative of the Warner-Holmes Project for the NY State University Construction Fund; and WILLIAM P. MARKS, in his official capacity as Regional Director of the NYS Division of Human Rights,**

                              **Defendants.**

◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊◊

APPEARANCES:

Larry D'Ambrosio
663 Sacandaga Road
Fort Johnson, New York 12070
Plaintiff, *Pro se*

Mastropietro Frade, LLC
John P. Mastropietro, Esq., of counsel
63 Franklin Street
Saratoga Springs, New York 12866
Attorney for Defendants Bast Hatfield, Inc., Michael Salisbury,
and AJ Lomnes

Hon. Eric T. Schneiderman, Attorney General of the State of New York
Kevin M. Hayden, Esq., Assistant New York State Attorney
The Capitol
Albany, New York 12224
Attorney for Defendants Lois McLaughlin and William P. Marks

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

Defendants Lois McLaughlin ("McLaughlin"), sued "in her official capacity as minority representative of the Warner-Holmes Project for the NY State University Construction Fund," and William P. Marks ("Marks"), "sued in his official capacity as Regional Director of the NYS Division of Human Rights," move (Dkt. No. 38) to dismiss the claims against them in the amended complaint (Dkt. No. 29) under Fed. R. Civ. P. 12(b)(1) (lack of subject-matter jurisdiction), and 12(b)(6) (failure to state a claim). As set forth below, the Court dismisses all claims against Marks and dismisses all claims against McLaughlin except the individual-capacity equal protection and due process claims against her under 42 U.S.C. § 1983.

## AMENDED COMPLAINT

According to the amended complaint (Dkt. No. 29), this employment discrimination lawsuit arises out of a construction project on the campus of the State University of New York College of Agriculture and Technology at Cobleskill ("SUNY Cobleskill"), on which defendant Bast Hatfield, Inc. ("BHI") was the "prime contractor" and plaintiff, a "minority business enterprise," was a roofing subcontractor.[1] As pertinent to plaintiff's claims against the movants, the amended complaint states that the original start date was May 17, 2010; that "on August 30, 2010 the agreement and questionable subcontract was signed"; that a "pre-roofing meeting" was held on September 21, 2010 "concerning the environmental conditions requirement stating that the deck be completely dry, in order to perform the work"; that the subcontract provided that "the entire project would have to be finished no later than December 15, 2010"; that "this was unrealistic relating to the weather, since the project started late, and fall/winter procedures takes

---

[1] BHI previously moved under Rule 12(b)(6) for dismissal of plaintiff's Title VII claim against it on the ground that plaintiff was not an employee of BHI. The Court denied the motion, finding that plaintiff had stated enough facts to make a plausible claim that he was an "employee" rather than a "subcontractor" of BHI (Dkt. No. 25, pp. 9-11).

twice as long"; that there were "weather shut downs" in October and November 2010 and a "complete shut down" for the winter from December 22, 2010 until May 16, 2011; and that BHI "refused to grant an extension and blamed [plaintiff]." Plaintiff continues:[2]

> Under due process of law, or fundamental fairness, Bast-Hatfield has to treat any Minority Business Enterprise basically as one of its own. To place the blame for situations that the subcontractor cannot control is not fundamentally fair. It is an erroneous deprivation of his rights. It is discriminatory. The nexus is the due process clause, fundamental fairness.

The amended complaint further alleges that "[t]he scheduled delivery of the roofing material on September 28, 2010, was put outside the normal staging area. Then restrictions regarding removal, storage, and new materials were made." Plaintiff contends that these were "pass through changes" costing additional time and money, and further that:

> When this was not acknowledged, then the parties involved once again were not fundamentally fair to the minority business. Not only that, but this action was one of deliberation and intention. How could you not realize it would cost more time and money? The nexus of this issue is discriminatory conduct under the Due Process Clause.

Plaintiff describes a pass-through claim as follows:

> On complex construction projects, subcontractors occasionally incur damages directly attributable to a breach by the owner of the prime contractor or employer. Although the subcontractor in such cases usually is not privy of the contract with the owner, the subcontractor may nonetheless prosecute "pass-through claim" for recovery of damages against the owner through the prime contractor. A pass through claim is allowed in furtherance of the principle that a subcontractor is entitled to enjoy the benefit of its bargain when the subcontract is terminated because the owner has breached its contract with the prime contractor". In this case the owner of SUCF (State University Construction Fund) and SUNY Cobleskill College were privy to the changes that were contrary to the standard roofing practices and affected the cost and working conditions of the minority business enterprise. The

---

[2] The Court quotes directly from the amended complaint without noting or correcting typographical or other errors.

-3-

contractor, Bast-Hatfield, Inc., the prime contractor was responsible to go to bat for the subcontractor, his employee.

The amended complaint continues:

In October 4, 2010 after the delivery and unloading of the roofing materials, the State Construction Fund representative Sidney Newbold or Lois McLaughlin (the minority rep) changed the designated staging area, splitting it into two locations, with half of the materials to be moved, then for a third time they finally made the staging area two miles away from the building being worked on. It involved a drive down Rte 7, a major thoroughfare, which forced the fork lift to be stuck in traffic, costing time and money. Roofing installations requires easy access to materials and dumpsters. Lifting materials on and off the roof requires that the materials be available next to the building. In order to get the roofing materials to the designated area picked by the SUCF and SUNY, the forklift had to drive back and forth full of supplies or waste down the same path the students were using, rushing back and forth to their classes. This created a safety issue that Western Contractors was not made aware when signing the subcontract. Because of this they had to hire a spotter to ensure the safety of the students.... The spotter, whenever a student walked by, had to alert the forklift operator to stop lifting materials above a student's head. ... This starting and stopping 30-40 times a day cost more time and created more delays.

Plaintiff alleges that defendant Lois McLaughlin, minority coordinator on the project, and others were aware of this issue, yet they treated plaintiff as if these conditions did not warrant the "pass through claims" to which plaintiff was entitled under the law. According to plaintiff: "This attitude was discriminatory and a clear violation of the fairness required under EEOC and state regulations, regarding conduct to a minority." He adds: "The nexus concerning law is the due process clause and the equal protection clause in both state and federal constitutions."

Part of the project concerned an elevated sidewalk, or pedestrian bridge. According to plaintiff, during fall 2010 BHI closed the walkway to student traffic for its own workers, but refused to close it for plaintiff. The amended complaint alleges:

This is absolute positive proof of the clear additional and deliberate policy concerning the stigmatizing of the minority contractor. Can ... Lois

-4-

> McLaughlin [or others] explain why the sidewalks were closed for the Bast-Hatfield workers and not for Western Contractors workers? On this issue alone there can be no explanation for the proof that the parties involved ignored the legal obligations related to working with a Minority Business Enterprise. ... The minority coordinator did not understand that everyone has to be treated the same, which is just, right, and fair?

Plaintiff contends this violated his rights under Title VII and the state and federal constitutions.

Plaintiff adds that on December 8, 2010, he "began getting 48 hour threats" from BHI. Plaintiff contacted Lois McLaughlin for help "with her apparently not understanding her obligation under law, because he made a legitimate claim." He continues: "Once that happens, then the state becomes responsible for an investigation into those claims under executive law." Also on December 8, 2010, BHI took work away from plaintiff, gave it to BHI's contractor, and back-charged the work to plaintiff. Plaintiff contends this was discriminatory. Ultimately, the project was "demobilized" until spring 2011 because "the college preferred the extension," although plaintiff was blamed for the delay. In the spring BHI hired a new project manager, charged plaintiff for his time, and refused to acknowledge the pass-through issues. The events put plaintiff "in a position where he would make no money and suffer serious stigma plus issues that should have been addressed by the minority representative Lois McLaughlin" and others. Moreover, in charging plaintiff for the supervision by the new project manager, BHI "once again treated the minority business enterprise as an adversary, not as an ally." McLaughlin "turned a blind eye to what was going on."

The amended complaint's first cause of action is for employment discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and the New York Human Rights Law, N.Y. Exec. L. § 312 ("Equal employment opportunities for minority group members and women"), and related regulations, which, plaintiff avers, "clearly state[] that the contractor shall not discriminate

-5-

against employees, which Western Contractors were, and especially against its minority designate, Larry D'Ambrosio." With respect to Marks, this cause of action states: "If the NYS Human Rights Regional Director William Marks had made the proper legal decision concerning this discrimination, that was documented thoroughly by the filing, and not used the excuse of 'lack of jurisdiction' then this denigration of his professional work would probably not of [*sic*] happened."

The second cause of action claims that various defendants, including McLaughlin, are liable to plaintiff under 42 U.S.C. § 1981 ("section 1981"). Section 1981 prohibits discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment. *See generally Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004). This cause of action appears to be based primarily on BHI's refusal to pay the alleged pass-through claims.

The third cause of action, under 42 U.S.C. 1983 ("section 1983"), asserts violations of the Due Process and Equal Protection Clauses. "Recovery under 42 U.S.C. § 1983 is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or federal statutory right and, second, that such denial was effected under color of state law." *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985). Plaintiff states:

> There is no doubt that the state actors, especially Lois McLaughlin, were responsible for the specific conduct the plaintiff complained about, and refused to recognize the "erroneous deprivation" of the constitutional rights, and refused to allow the safeguard protections that should have been observed in this governmental action, regarding the safety issues to the students and children, as well as the other serious "reckless indifference" actions of Bast-Hatfield.

The fourth cause of action concerns the conduct of BHI in including a jury-trial waiver in

-6-

the subcontract. It does not assert a claim against Marks or McLaughlin.

## DISCUSSION

**Standard under Rule 12(b)(6)**

To survive a dismissal motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although a court must accept as true all the factual allegations in the complaint, *id.*, that requirement is inapplicable to legal conclusions. *See Iqbal*, 556 U.S. at 678. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

In reviewing a motion to dismiss under Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Tessler v. Paterson*, 451 F. App'x 30, 32 (2d Cir. 2011) (citation and quotation marks omitted).

**William P. Marks**

With respect to movant Marks, the amended complaint alleges: "If the NYS Human

-7-

Rights Regional Director William Marks had made the proper legal decision concerning this discrimination, that was documented thoroughly by the filing, and not used the excuse of 'lack of jurisdiction' then this denigration of [plaintiff's] professional work would probably not of [*sic*] happened." This allegation is based on the "Determination and Order of Dismissal for Lack of Jurisdiction" issued by Marks as Regional Director of the New York State Division of Human Rights ("DHR").[3] Marks' decision dismissed plaintiff's DHR complaint alleging employment discrimination by BHI, and held as follows:

> The New York State Division of Human Rights lacks jurisdiction over this case because complainant is an independent contractor. An "independent contractor" is not an "employee", and therefore there is no "employer" over whom the Division may exert jurisdiction. An independent contractor is not protected against discrimination under the employment provisions of the Human Rights Law.

Plaintiff can state no claim against Marks individually under Title VII, because Marks was not his employer, and in any event, there is no individual liability under that statute.[4] *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313-15 (2d Cir. 1995). The absence of an employment relationship also bars any discrimination claim against Marks in his individual capacity under the New York Human Rights Law.

Plaintiff cannot pursue a section 1983 individual-capacity claim against Marks based on the decision dismissing plaintiff's DHR complaint, because Marks' decision was made in a quasi-judicial capacity. *See Kirkland v. City of Peekskill*, 651 F. Supp. 1225, 1230 (S.D.N.Y. 1987)

---

[3] Clearly, Marks' decision is integral to the amended complaint and may be considered on this motion, although plaintiff did not append a copy to his amended complaint.

[4] The caption to the amended complaint states that plaintiff is suing Marks and McLaughlin in their official capacities. In view of plaintiff's *pro se* status, the Court also considers whether plaintiff's allegations plausibly state claims against them in their individual capacities.

("[The DHR] functions in a quasi-judicial capacity when it processes discrimination complaints."), *aff'd*, 828 F.2d 104 (2d Cir. 1987)); *see also White v. Martin*, 26 F. Supp. 2d 385, 390 (D. Conn. 1998), *aff'd sub nom. White v. Commission of Human Rights*, 198 F.3d 235 (2d Cir. 1999). Therefore, Marks is entitled to absolute immunity. *See Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). Any section 1981 claim against Marks individually would necessarily be based on Marks' conduct as a state actor; thus, it must be brought under section 1983, not section 1981. *See Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735 (1989).[5]

If the amended complaint is read to assert an official-capacity claim against Marks under Title VII, section 1981, or section 1983, such a claim would in essence be a claim against the DHR, an arm of New York State. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather against the official's office.")). Any such claim is barred by the Eleventh Amendment. *See Baba v. Japan Travel Bureau Int'l. Inc.*, 111 F.3d 2, 5 (2d Cir. 1997); *Walsh v. City of Auburn*, 942 F.Supp. 788, 795 (N.D.N.Y. 1996). Further, there is nothing in the amended complaint or other filings that would support prospective injunctive relief against Marks. *See generally Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03, 106 (1984).

Viewing the amended complaint most favorably towards this *pro se* plaintiff, and interpreting it to raise the strongest arguments that it suggests, the Court can discern no cognizable claim against Marks in his individual or official capacity. All claims against Marks are dismissed under Rule 12(b)(1) and (6).

---

[5] The *Jett* court held that "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." 491 U.S. at 735.

**Lois McLaughlin**

As already stated, there is no individual liability under Title VII; thus, plaintiff cannot pursue a Title VII claim against McLaughlin individually. Nor does plaintiff claim to be an employee of the State University Construction Fund ("SUCF"), so his claim against McLaughlin in her official capacity cannot be read as a Title VII claim against SUCF. Any official-capacity claim against McLaughlin for violation of plaintiff's state or federal constitutional rights is essentially a claim against the State University Construction Fund, an arm of New York State, and is barred by the Eleventh Amendment. *See Whitten v. State Univ. Constr. Fund*, 493 F.2d 177, 180 (1st Cir. 1974); *Charles Simkin & Sons, Inc. v. State Univ. Constr. Fund*, 352 F.Supp. 177, 179 (S.D.N.Y. 1973), *aff'd* 486 F.2d 1393 (2d Cir. 1973).

Plaintiff's other claims against McLaughlin appear to be section 1981 and 1983 claims asserted against her in her individual capacity, based on the role she played as a state actor in connection with plaintiff's performance on this project. As noted above, a damages claim against a state actor for a violation of section 1981 is properly pursued in a section 1983 action. *See Jett*, 491 U.S. at 735. The question, then, is whether plaintiff has pleaded a plausible section 1983 claim against McLaughlin individually. Plaintiff sets forth sufficient factual allegations to make out a claim that, in her role as "minority representative" or "minority coordinator" for SUCF in connection with the project in issue, McLaughlin owed responsibilities to plaintiff, a minority contractor; that she failed to carry out those responsibilities; and that the failure was due to discrimination against plaintiff as a minority contractor.[6] Reading the amended complaint with

---

[6] On this record, the Court is unable to determine the nature and extent of McLauglin's responsibility and authority in connection with this project. Movant has not cited to any statute or regulation in this regard. The Court notes that an attachment to plaintiff's opposition to this motion includes what appears to be an email from McLaughlin to plaintiff dated December 13, 2010 bearing the

-10-

the deference to which this *pro se* plaintiff is entitled, the Court finds that he has pleaded a plausible section 1983 claim that McLaughlin, a state actor, denied him equal protection. Plaintiff also claims that he sought help from McLaughlin when BHI began sending him 48-hour notices; that apparently she did not "understand[] her obligation under law, because he made a legitimate claim"; and that the issues "should have been addressed by the minority representative Lois McLaughlin." While the basis of these allegations is not clear, it appears that plaintiff may be claiming that there was a procedure that McLaughlin should have initiated or pursued in her role as minority representative. In view of plaintiff's *pro se* status, the Court finds enough to allow plaintiff to go forward with a section 1983 due process claim against McLaughlin in her individual capacity. The Court finds no other plausible damages claim against McLaughlin, nor are there allegations that would support prospective injunctive relief against her. Accordingly, all claims against McLaughlin are dismissed except for the section 1983 claim for denial of equal protection and due process.

**CONCLUSION**

It is therefore

ORDERED that the motion to dismiss (Dkt. No. 38) by defendants Lois McLaughlin and William P. Marks is granted in part and denied in part; and it is further

ORDERED that all claims against defendant William P. Marks are dismissed with prejudice, and he is terminated as a defendant in this action; and it is further

ORDERED that all claims against Lois McLaughlin are dismissed with prejudice, except that dismissal is denied as to the claim against her under 42 U.S.C. § 1983 for denial of equal

---

signature: "Lois McLaughlin, Director, Opportunity Programs, State University Construction Fund."

-11-

protection and due process; and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York and to serve plaintiff by certified mail, return receipt requested.

IT IS SO ORDERED.

Date: October 26, 2015
      Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge